O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

Case No. SACV 09-0141 DOC (ANx)                        Date: October 26, 2009

Title: CALIFORNIA PHARMACY MANAGEMENT, LLC V. REDWOOD AND CASUALTY INSURANCE COMPANY, ET AL.

---

DOCKET ENTRY
    [I hereby certify that this document was served by first class mail or Government messenger service, postage prepaid, to all counsel (or parties) at their respective most recent address of record in this action on this date.]
                                                          Date:_____ Deputy Clerk: _____

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

   Kristee Hopkins                                        Not Present
Courtroom Clerk                                         Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFF:  ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                                  NONE PRESENT

---

PROCEEDING (IN CHAMBERS): (IN CHAMBERS): ORDER DENYING DEFENDANTS' MOTION TO DISMISS

      Before the Court is Defendants Redwood Fire and Casualty Insurance Company; Cypress Insurance Company; Oak River Insurance Company; American All Risk Insurance Services, Inc.; American Commercial Claims Administrators, Inc.; Applied Risk Services, Inc.; Applied Underwriters, Inc.; California Insurance Company; and National Liability and Fire Insurance Company (collectively, "Defendants") Motion to Dismiss the Third Amended Complaint (the "Motion"). The Court finds the matter appropriate for decision without oral argument. Fed R. Civ. P. 78; Local R. 7-15. After considering the moving, opposing, and replying papers, and for the reasons stated below, the Court hereby DENIES the Motion.

## I. BACKGROUND

### A. Procedural History

On February 5, 2009, Plaintiff California Pharmacy Management, LLC ("CPM") filed its original complaint alleging a Racketeer Influenced and Corrupt Organizations Act ("RICO") cause of action against Defendants based on mail and wire fraud. On March 12, 2009, Defendants filed a motion to dismiss. In response, CPM filed its First Amended Complaint on March 23, 2009. On April 1, 2009, the parties entered into a stipulation to allow CPM to file a Second Amended Complaint ("SAC"). On July 29, 2009, this Court dismissed the SAC with leave to amend. In response to the Court's Order, Plaintiff filed its Third Amended Complaint ("TAC") on August 18, 2009. Defendants contend that the TAC does not cure the defects in either the SAC or the original pleadings and ask this Court to dismiss Plaintiff's action with prejudice.

### B. Factual Allegations

By its TAC, CPM brings a RICO suit against Defendants, workers compensation insurers and claims administrators, for undertaking a scheme to defraud CPM "through a collusive and systematic campaign of sham litigation, fraudulent objections and dilatory conduct carried out by mail fraud and wire fraud, to avoid payment of valid bills and liens for tens of thousands of needed medications prescribed and dispensed to injured workers in over 4000 workers' compensation cases in the California Workers' Compensation Board ("WCAB"); to destroy CPM as a valid company; and to abuse the process of and defraud the WCAB." TAC ¶ 1. CPM's contracts obligate it to "bill and collect for medications dispensed to injured workers." *Id.* ¶ 2. Defendants have allegedly neglected to pay CPM because they do not "want to pay the prices legally submitted by CPM." *Id.*

The TAC alleges that Defendants strongly dislike the physician in-office medication programs, notwithstanding the legality of such programs. *Id.* ¶ 3. It further alleges that Defendants "conspired with other carriers and devised a scheme to put CPM out of business and to destroy the physician in-office medication dispensing program." *Id.* To effectuate their scheme, Defendants allegedly communicated to their "agents and representatives and the agents and representatives of other carriers the manner in which the scheme to defraud was to be implemented." *Id.* Pursuant to this scheme, Defendants: (1) ceased payment for all claims submitted by CPM; (2) delivered letters to CPM offering pretextual objections to CPM claims; and (3) consolidated all CPM lien claims before the WCAB. *Id.* ¶¶ 3-7. Plaintiff avers that Defendants' objection letters (and their subsequent litigation before the WCAB) were knowingly "baseless," "based on false assumptions," and "served as lulling activity that created a severe cash flow problem for CPM." *Id.* ¶¶ 5-7. Defendants allegedly "had no interest whatsoever in the actual *outcome* of any of its individual objections before the WCAB, but intended to use the WCAB *process* to stonewall CPM and shut off its cash flow." *Id.* ¶ 6. Plaintiff allegedly sustained "millions of dollars" of economic losses as a result of Defendants' scheme. *Id.* ¶ 9.

      The TAC contends that Defendants' activity violates RICO, 18 U.S.C. § 1961, *et seq.* TAC, 9. Specifically, CPM contends that Defendants have engaged in and are continuing to engage in mail fraud and wire fraud in violation of 18 U.S.C. § 1962(c) and have engaged in a conspiracy to commit such acts in violation of 18 U.S.C. § 1962(d).¶

## II.    LEGAL STANDARD

      Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Once it has adequately stated a claim, a plaintiff may support the allegations in its complaint with any set of facts consistent with those allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562, 127 S. Ct. 1955 (2007). A plaintiff may not merely recite the elements of a cause of action in its complaint. *Id.* at 555. Instead, to survive a 12(b)(6) motion to dismiss, the complaint must contain factual allegations sufficient to "raise a right of relief above the speculative level. *Id.* Rule 12(b)(6) motions are viewed with disfavor. *Broam v. Bogan*, 320 F.2d 1023, 1028 (9th Cir. 2003). When evaluating a 12(b)(6) motion, the Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff. *Id.*; *Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006).

      Federal Rule of Civil Procedure 12(b)(1) provides that a complaint must be dismissed for lack of subject matter jurisdiction. Subject matter jurisdiction is absent where there is not justiciable case or controversy as required by Article III, Section 2, of the U.S. Constitution. In addition, a complaint must be dismissed for its failure to join a necessary party under Federal Rule of Civil Procedure 19. *See* Fed. R. Civ. P. 12(b)(7).

## Iii.    Discussion

      In its July 29, 2009 Order, this Court found that the SAC's allegations, when taken as true, failed to state a claim upon which relief could be granted. First, the SAC's almost exclusive focus on Defendants' exercise of their rights to contest bills and liens submitted by CPM in claims filed by injured workers before the WCAB ran afoul of the *Noerr-Pennington* doctrine, which immunizes those who petition the government from liability for statutory violations. Second, the SAC's allegations that Defendants submitted baseless objections to CPM's claims for payment failed to sustain a cause of action for mail fraud and wire fraud under 18 U.S.C. § 1341. Third, the SAC neglected to demonstrate that CPM had suffered any concrete injury due to Defendants' alleged racketeering activity. For these reasons, this Court granted Defendants' motion to dismiss the SAC but provided Plaintiff leave to amend.

      Despite Plaintiff's attempt to remedy the defects identified by the Court's July 29, 2009 Order, Defendants again seek the TAC's dismissal with prejudice. First, Defendants aver that the TAC is barred by the *Noerr-Pennington* doctrine. Second, Defendants contend that CPM does not have

standing as it is not the provider of service authorized to seek payment for services provided to injured workers.  Third, Defendants contend that CPM should be required to join as necessary parties under Fed. R. Civ. P. 19 the physicians with which CPM contracts, or else the SAC must be dismissed for failure to join necessary parties under Fed. R. Civ. P. 12(b)(7).  Fourth, Defendants contend that the TAC fails to plead mail and wire fraud under 18 U.S.C. § 1341, 1343, and 1962(c) with the requisite particularity under Fed. R. Civ. P. 9(b).  Fifth, Defendants claim that CPM has not alleged facts sufficient to constitute mail or wire fraud under 18 U.S.C. § 1341 or 1343.  Sixth, Defendants maintain that the TAC, like its predecessor, does not contain facts sufficient to establish that CPM has suffered a "concrete financial injury" as required for any action under RICO.  Seventh, Defendants argue that because CPM's mail and wire fraud claims are insufficient, so too is its RICO conspiracy claim under 18 U.S.C. § 1962(d).

### A.    The *Noerr-Pennington* Doctrine

#### 1.    General Applicability of the *Noerr-Pennington* Doctrine

In its Order dismissing the SAC with leave to amend, this Court found that Plaintiff's allegations ran afoul of the *Noerr-Pennington* doctrine.  "Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress are generally immune from liability." *Empress LLC v. City and County of S.F.*, 419 F.3d 1052, 1056 (9th Cir. 2005) (citing *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000)); *see also White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000) ("The *Noerr-Pennington* doctrine ensures that those who petition the government for redress of their grievances remain immune from liability for statutory violations, notwithstanding the fact that their activity might otherwise be proscribed by the statute involved.").  The Ninth Circuit has applied the doctrine to protect petitioning activity as well as activity incidental to and in anticipation of petitioning activity.  *See Sosa v. DIRECTV*, 437 F.3d 923, 934-35 (9th Cir. 2006) ("[I]n the litigation context, not only petitions sent directly to the court in the course of litigation, but also 'conduct incidental to the prosecution of the suit' is protected by the *Noerr-Pennington* doctrine."); *see also Premier Med. Mgmt. Sys., Inc. v. California Ins. Guarantee Assn.*, 136 Cal. App. 4th 464, 479 (holding that actions taken in anticipation of proceedings before the WCAB were protected by the *Noerr-Pennington* doctrine).  The doctrine applies to petitions before both state governments and the federal government.  *See Kottle v. Northwest Kidney Ctr.*, 146 F.3d 1056, 1059 (9th Cir. 1998).  The doctrine "derives from the First Amendment's guarantee of the 'the right of the people . . . to petition the Government for a redress of grievances.'"  *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006).

The SAC alleged, *inter alia*, that Defendants "stonewalled" CPM, objected to CPM bills and liens without reason, sent groundless and frivolous boilerplate objections to CPM regarding its bills and liens, and consolidated proceedings before the WCAB in order to further delay resolution of CPM's bills and liens.  *See* SAC ¶¶ 31-43.  This Court held that such activity, though conducted prior to litigation before the WCAB, amounted to protected conduct incidental to litigation.  *See Sosa*, 437 F.3d

95-26. The TAC likewise alleges that Defendants stonewalled CPM by refusing to discuss its bills and liens, issued boilerplate objection letters that were baseless, withheld funds owed to CPM, and disingenuously used the WCAB process to consolidate and delay the resolution of CPM's bills and liens. *See* TAC ¶¶ 36-40. Pursuant to this Court's prior Order, such allegations concern conduct in anticipation of protected petitioning activity and cannot alone form the basis for a cognizable RICO claim.

However, unlike the SAC, the TAC additionally avers that Defendants engaged in "lulling" conduct that Plaintiff contends is separate and apart from Defendants' alleged misuse of the WCAB process. Specifically, the TAC alleges that Defendants induced CPM into believing that they intended to resolve CPM's claims in good faith. *Id.* ¶ 35(a). The TAC also alleges that Defendants falsely communicated to other carriers and administrators "that CPM was being investigated for fraud or illegal practices." *Id.* ¶ 35(d). Neither allegation necessarily concerns petitioning activity before the WCAB; indeed, the latter concerns fraudulent activity entirely outside the scope of the WCAB. Thus, this Court declines to prospectively apply the *Noerr-Pennington* doctrine to activity that may have been conducted antecedent to and without contemplation of litigation before the WCAB. If the TAC's allegations are taken as true, then Defendants' fraudulent conduct predated their protected petitioning activity, such that the WCAB process was merely a vehicle to effectuate Defendants' scheme. *See Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 506-07, 108 S. Ct. 1931 (1988) ("[T]he mere fact that an anticompetitive activity is also intended to influence governmental action is not alone sufficient to render that activity immune from antitrust liability.").

Defendants nonetheless recycle the arguments in this Court's prior order to compel dismissal of the TAC pursuant to *Noerr-Pennington*. Defendants argue that Plaintiff's amended allegations still concern conduct in anticipation of litigation before the WCAB. *See Premier*, 136 Cal. App. 4th at 468. In *Premier*, medical providers sued workers' compensation insurers and employers alleging that after the medical providers submitted their "physicians bills to defendants for payment, and filed liens in numerous workers' compensation cases before the [Workers' Compensation Appeals Board], defendants collectively conspired to contest, delay and avoid payment of these bills and liens." Premier, 136 Cal. App. 4th at 470. The *Premier* Court held that the complaint was both subject to California's special motion to strike and that the action was barred by the *Noerr-Pennington* doctrine. *See id.* at 479 (finding that "[a]ll of the actions which form the basis for the complaint took place in anticipation of, or during proceedings before the WCAB").

Defendants' arguments are premature. This Court has already applied the *Premier* and *Sosa* cases to protect conduct that, rather than simply bearing some relationship to litigation, is incidental to and in anticipation of proceedings before the WCAB. As such, allegations in the TAC that merely duplicate those in the SAC are alone insufficient to sustain Plaintiff's claim.[1] However, the

---

[1]The TAC (and Plaintiff's briefing in opposition to Defendants' Motion to Dismiss) is rife with Plaintiff's entirely irrelevant lamentations about the WCAB process.

TAC's new allegations concerning Defendants' "lulling" conduct are distinguishable.  As previously mentioned, the fact that Defendants' alleged conspiracy to defraud CPM predated litigation before the WCAB does not mean that it was hatched in anticipation of the WCAB.  Indeed, Plaintiff alleges that the WCAB process was but one means to defraud CPM: Defendants also disseminated innuendo about CPM to other carriers and administrators, induced other insurers to defraud CPM, and deceived CPM into believing that they intended to resolve its bills and liens in good faith.  None of these activities necessarily falls within *Premier*'s ambit.

The application of the *Noerr-Pennington* doctrine to the TAC's allegations with regard to Defendants' pre-litigation conduct should be resolved after the parties have had an opportunity to conduct discovery.  This Court may ultimately find that the TAC's new allegations concern activity conducted in anticipation of litigation.[2]  At the present time, however, the Court considers it appropriate to allow Plaintiff to move forward with its "lulling" allegations.

### 2. The Sham Litigation Exception

The *Noerr-Pennington* doctrine does not protect "petitioning conduct that, although 'ostensibly directed toward influencing governmental action, is a mere sham to cover what is nothing more than an attempt to interfere directly with the business relationships of a competitor.'" *Sosa*, 437 F.3d at 938 (quoting *Easter R.R. Presidents Conference v. Noerr Motor Freight*, 365 U.S. 127, 144, 81 S. Ct. 523 (1961)).  As the Supreme Court has stated, "[t]he 'sham' exception to *Noerr* encompasses situations in which persons use the governmental *process* - as opposed to the *outcome* of that process - as an anticompetitive weapon." *City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 380,

---

*See, e.g.*, TAC ¶ 38 ("Proceedings at the WCAB . . . can be egregiously delayed and protracted."); *id.* ¶ 44 ("Consolidation proceedings in the WCAB take years").  The Court has already stated that it will not entertain Plaintiff's generalized challenge to the WCAB's dispute resolution mechanism and/or the legitimacy of WCAB proceedings.  *See* Order Dismissing SAC, at 9.  Indeed, this Court noted that the WCAB is capable of resolving all of Plaintiff's concerns about Defendants' "stonewalling."  *Id.*  Accordingly, Plaintiff's allegations about the WCAB proceedings are of no relevance to whether Defendants acted fraudulently or whether Plaintiff suffered harm as a result.

[2]The TAC alleges that pursuant to their scheme to defraud CPM, Defendants instructed their agents and representatives to submit baseless objection letters and consolidate claims before the WCAB.  *See* TAC ¶ 3.  As previously mentioned, these allegations are duplicative of the SAC and the conduct alleged constitutes protected conduct taken in anticipation of litigation before the WCAB.  To the extent that the TAC's remaining allegations concerning Defendants' pre-litigation conduct are later revealed to concern conduct incidental to or in anticipation of litigation, those too will be barred by *Noerr-Pennington*.

111 S. Ct. 1344 (1991) (emphasis in original).

Plaintiff again claims that any of Defendants' protected petitioning activities - *i.e.*, objecting to CPM's bills and liens and consolidating claims before the WCAB - fall under the "sham" exception to the *Noerr-Pennington* doctrine. As before, Plaintiff argues that Defendants had no interest in the outcome of the WCAB litigation. TAC ¶ 41. Specifically, Plaintiff alleges that Defendants intended only to delay the resolution of CPM's claims long enough to hinder CPM's cash flow and drive it out of business. *Id.* ¶ 38. To substantiate this allegation, Plaintiff claims that if Defendants had genuine interest in obtaining speedy resolution of their claims, "it could litigate those objections promptly in any single WCAB case." *Id.* ¶ 39. The Court's prior order addressed and disposed of these arguments.

As the Court has already observed, the fact that Defendants stand to benefit from their alleged dilatory tactics does not mean that they have no interest in the actual outcome of the WCAB litigation. To the contrary, Defendants scheme to defraud and bankrupt CPM is only further advanced by the WCAB's rejection of CPM's ability to recover from Defendants. The prior-cited case of *Oregon Natural Resources Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991) is instructive here. In that case, the Ninth Circuit affirmed a dismissal of a counterclaim and third-party complaint for failure to sufficiently allege that a lawsuit was a sham. *Oregon Natural Resources Council*, 944 F.2d 532. The counterclaimant alleged that plaintiff's suit against it fell within the sham litigation exception because it was "part of a 'pattern of baseless, repetitive claims'" and because plaintiff had allegedly made "knowing misrepresentations to the court." *Id.* at 534. The counterclaimant further alleged that the plaintiff only brought suit for the "sole purpose of delaying and impeding" counterclaimant's business. The Ninth Circuit held that even if plaintiff had an interest in delay, it was nonetheless genuinely seeking relief rather than merely abusing judicial process. *Id.* at 535. Here too, Defendants have a strong interest in the actual outcome of the WCAB litigation, and in fact, their interest is as strong or even stronger than their tangential interest in delaying the resolution of Plaintiff's claims.

Accordingly, to the extent that some or all of the allegations in the TAC are later determined to fall within the scope of *Noerr-Pennington*, the sham litigation exception does not apply.

**B.     Standing**

Defendants separately argue that CPM lacks standing, as it "is merely a billing and collections manager" and only the physicians suffered injuries as a result of Defendants' alleged conduct. *See* Def.'s Mot. To Dismiss, at 13. To establish standing under Article III of the Constitution, a plaintiff must demonstrate: (1) an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, meaning that the injury must "affect the plaintiff in a personal and individual way," and (b) "'actual or imminent,' not 'conjectural' or 'hypothetical'"; (2) "there must be a causal connection between the injury and the conduct complained of – the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action

of some third party not before the court;" (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130 (1992) (internal citations omitted). Each element of standing is "an indispensable part of the plaintiff's case," and accordingly "must be supported in the same way as any other matter on which the plaintiff bears the burden, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561.

### 1. Interference with Contractual Relationships

Plaintiff asserts that Defendants' fraudulent conduct interfered with its current and prospective contractual relationships with contracting physicians and cut off its cash flow generated from those relationships. TAC ¶¶ 1-9, 30, 34-44. In response, Defendants argue that Plaintiff may only bring its claim on behalf of its contracting physicians and that those physicians assigned to CPM, at most, "RICO causes of action [for] . . . interference with the contractual relationships between CPM and its physicians." *Id.* ¶ 12. Interference with contractual relations cannot serve as the predicate act for a RICO claim. *See Annulli v. Panikkar*, 200 F.3d 189, 199 (3d Cir. 1999). In *Annulli*, plaintiff based his RICO claim on defendants' alleged breaches of contract and their interference with plaintiff's contractual relations. The Third Circuit held that plaintiff had failed to "alleg[e] that the Defendants committed one of the state law crimes defined as racketeering activity in § 1961(1)(A)." *Annulli*, 200 F.3d at 199. The court further observed that a state law cause of action like "simple breach of contract or intentional interference with contract, is not a predicate act of racketeering activity enumerated in § 1961(1)." *Id.*

*Annulli* is inapposite to this matter. First, Plaintiff does not allege interference with contractual relations *on behalf of* its contracting physicians. Rather, it argues that Defendants' alleged fraudulent conduct resulted in direct harm to Plaintiff, as a result of the degradation of Plaintiff's contracts with prospective and current physicians and the associated loss of cash flow. *See* TAC ¶ 36. Second, Defendants mistakenly conflate the harm alleged by Plaintiff with the underlying basis for the TAC's RICO action. The TAC does not allege a cause of action for interference with contract. Instead, it alleges that Defendants (and other insurers) defrauded CPM into believing that they intended to resolve their objections to CPM's bills and liens in good faith, when in fact, they intended to delay repayment, exploit the WCAB process, and ultimately bankrupt CPM. *See* TAC ¶ 35. The harm that resulted from this allegedly fraudulent activity includes, but is not limited to, the degradation of CPM's current and prospective contractual relationships with its contracting physicians. *See id.* ¶ 48. In *Annulli*, plaintiff's sole basis for his civil RICO claim was that defendants had breached their contracts with him, while simultaneously interfering with his existing contractual relations. 200 F.3d at 199. Here, contract interference, while a cognizable harm sufficient to confer Plaintiff with standing, is not the wrongful action alleged to have been committed by Defendants. *See* TAC ¶¶ 1-9, 30, 34-44.

### 2. Concrete Financial Harm

Plaintiff also argues that it has suffered financial losses as a result of Defendants' failure to pay its contracting physicians amounts in excess of $7 million. But those losses were suffered by contracting physicians and not CPM. *See id.* ¶ 29 ( alleging that Defendants "are wrongfully withholding over $7 million in workers' compensation premium revenue set aside for and rightfully owed to injured workers and their physicians"). Plaintiff concedes that it merely "submits bills and liens for medications for reimbursement" but does not itself recover any of the monies ultimately paid to contracting physicians. *See id.* ¶¶ 23-26. Nonetheless, Plaintiff asserts that, having acquired legal title to its contracting physicians claims, it may bring such claims on their behalf. *See* TAC ¶ 12 ("CPM also has assignments from its highest volume contracting physicians and soon expects to have assignments from all or most of its physicians of their RICO causes of action against [Defendants for their] interference with the contractual relationships between CPM and its physicians.").

In *Sprint Commc'ns Co. v. APCC Servs. Inc.*, the Supreme Court held that "[l]awsuits by assignees, including assignees for collection, are cases and controversies of the sort traditionally amenable to, and resolvable by, the judicial process." 128 S. Ct. 2531, 2542, 171 L. Ed. 2d 424 (2008) (internal citations and quotation marks omitted). Defendants question whether "the physicians who CPM claims have been harmed have assigned their right to payment to CPM." Mot. at 15. Plaintiff's vague reference to its alleged assignments leaves doubt as to whether such assignments are sufficient to sustain its claims on behalf of *all* or even most contracting physicians. However, for the time being the Court must accept Plaintiff's allegations as true, even where those allegations concern facts predicate to its standing to bring claims on behalf of its contracting physicians.

Defendants also argue that *Annulli* bars Plaintiff's assigned claims. Specifically, they argue that Plaintiff has only received assignments for the physicians' RICO causes based upon Defendants' alleged interference with their contractual relations. *See* TAC ¶ 12. It is unclear, from the pleadings alone, whether Plaintiff's alleged assignments are limited to RICO claims that allege only interference with contractual relations or whether the assignments cover RICO claims based on the underlying fraudulent conduct alleged throughout the TAC. *See id.* ¶¶ 34-44. If the former is the case, and Plaintiff has only yet received assignments of legal claims for interference with contractual relations, then Defendants may raise the issue of standing at a later date. In an effort to construe the TAC in the light most favorable to the Plaintiff, this Court will proceed by permitting CPM to bring RICO claims on behalf of the contracting physicians to the extent that it has been assigned those claims and that the assignments in question are not restricted to claims for interference with contractual relations.

### C. Joinder

Defendants additionally seek joinder of CPM's contracting physicians pursuant to Rule 19 or absent joinder, seek dismissal pursuant to Rule 12(b)(7). In relevant part, Rule 19 requires joinder of a party subject to service and subject-matter jurisdiction if "in that person's absence, the court cannot accord complete relief among existing parties . . ." Fed. R. Civ. P. 19(a)(1)(A). Both

parties concede that the contracting physicians' alleged assignments of their RICO claims to CPM obviate the need for joinder. Still, Defendants argue again that *Annulli* renders the assignments inapplicable to the current dispute, leaving the contracting physicians' cognizable RICO claims unaccounted for. The Court reiterates that under a Rule 12(b)(6) analysis, it must construe all allegations in the light most favorable to the Plaintiff. As such, and with due consideration of Plaintiff's failure to clarify the scope and comprehensiveness of the alleged assignments, the Court for now considers the assignments sufficient to allow CPM to bring its contracting physicians' RICO claims that arise out of Defendants' fraudulent conduct. Joinder is therefore unnecessary under Rule 19 and dismissal improper under Rule 12(b)(7).

### D. The Fraud Allegations

Defendants argue that the TAC's allegations of fraud are insufficient, incapable of sustaining a cause of action under the applicable RICO statutes, and unspecific as to the financial injury allegedly suffered by Plaintiff. In keeping with the parties' briefing on this sub-set of issues, the Court will deal with each argument separately:

#### 1. Particularity

Civil RICO fraud claims are subject to Rule 9(b)'s requirement that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004) (citing *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1989)). To satisfy Rule 9(b), a RICO complaint must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Id.* (internal citations and quotation marks omitted). In a case with multiple defendants, the plaintiff must "identify the role of each defendant in the alleged fraudulent scheme." *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007). However, RICO claims not predicated upon fraud need not be pleaded with particularity. *Lauter v. Anoufrieva*, No. CV 07-6811, 2009 WL 2192362, * 8 (C.D. Cal. July 14, 2009).

The TAC's RICO claim is predicated on alleged violations of federal statutes prohibiting mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and conspiracy to violate 18 U.S.C. § 1962(c). All three acts are fraud predicates that must be pleaded with particularity. *Id.* To this end, Plaintiff alleges that Defendants violated 18 U.S.C. § 1341 and 18 U.S.C. § 1343 by delivering fraudulent objection letters and offering fraudulent explanations to CPM "[s]tarting approximately two years ago." *See* TAC ¶ 35-36. Defendants allegedly continue to send baseless objection letters to CPM and continue to perpetuate their fraudulent representations as to their intent to resolve CPM's bills and liens in good faith. *See id.* The TAC avers that Defendants gave the fraudulent impression that their objections to CPM's bills were "business-as-usual" when, in fact, "all of the initial objections were part of a preplanned scheme to defraud CPM." *Id.* ¶ 36. The TAC further alleges that Defendants falsely claimed that they had investigated CPM's claims in good faith, when in fact they had not. *Id.* ¶ 38.

Finally, the TAC alleges that Defendants' petitions for consolidation before the WCAB are based on misrepresentations of fact about CPM's licensing and its business dealings with its contracting physicians. *Id.* ¶¶ 40-41.

The TAC alleges Defendants' systematic denial of claims and the not infrequent submission of letters that offered pretextual objections and false assurances of Defendants' intent to resolve CPM's bills and liens in good faith. *Id.* ¶¶ 34-44. Defendants nonetheless demand that Plaintiff offers greater particularity as to the "time, place, and specific content of the false representations." *See* Def.'s Mot. To Dismiss, at 17 (citing *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986)). However, Defendants' reliance upon *Schreiber* is misplaced. In that case, the plaintiff failed "to mention any use of the mails or telephones" and indeed simply cited to the mail fraud and wire fraud statutes. 806 F.2d at 1401. Here, by contrast, Plaintiff describes in detail the content of the allegedly baseless letters sent by Defendants to CPM, the content of telephone conversations between Defendants' adjustors and CPM collectors in which the adjustors allegedly offered $0 or $1, and Defendants' "lulling" activity. TAC ¶¶ 35-36, 38. While Plaintiff neglects to identify how each Defendant participated in the alleged fraud, it nonetheless identifies Berkshire Hathaway workers' compensation insurers and claims administrators ("BH") as the party primarily responsible for effectuating the fraud identified in the TAC . The remaining Defendants are identified as identified as subsidiaries of BH or entities reinsured by BH affiliates. *See id.* ¶¶ 12-21.

Accordingly, the Court finds that the TAC's allegations are sufficiently particular so as to satisfy Plaintiff's Rule 9(b) obligations.

### 2. Sufficiency

A violation of 18 U.S.C. § 1962(c) requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S. Ct. 3275 (1985). In addition, to demonstrate a pattern of racketeering activity, Plaintiff must allege two predicate acts that are related and amount to, or threaten the likelihood, of continued criminal activity. *H.J., Inc. v. Northwestern Bell. Tel. Co.*, 492 U.S. 229, 239-40, 109 S. Ct. 2893 (1989).

The two predicate acts in the instant lawsuit are mail fraud and wire fraud. To allege a violation of mail fraud under 18 U.S.C. § 1341, Plaintiff must show that: "(1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud." *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th Cir. 2004) (quoting *Schreiber*, 806 F.2d at 1400). In addition, to allege a claim for wire fraud under 18 U.S.C. § 1343, Plaintiff must show "(1) the formation of a scheme or artifice to defraud[;] (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud." *Schreiber*, 806 F.2d at 1400 (citing *United States v. Louderman*, 576 F.2d 1383, 1387-88 & n.3 (9th Cir.), *cert. denied*, 439 U.S. 896, 99 S. Ct. 257 (1978)).

In dismissing the SAC, this Court identified two deficiencies with Plaintiff's RICO claim. First, the SAC's allegations could not support an intent to deceive. The SAC (like the TAC) alleged that Defendants submitted baseless objection letters to CPM in response to its claims for payment. However, as this Court recognized, an action for fraud cannot lie "where the sender knows the recipient will not be deceived by the falsehoods." *Sosa*, 437 F.3d at 941 (citing *United States v. Pendergraft*, 297 F.3d 1198, 1209 (11th Cir. 2002)). Second, the SAC alleged that Defendants' allegedly baseless objection letters collectively advanced an incorrect interpretation of California law with respect to CPM's conduct and, in so doing, defrauded CPM. However, "misrepresentations of the law are not actionable as fraud, including under the mail and wire fraud statutes, because statements of the law are considered merely opinions." *Id.* at 940.

The TAC does not suffer from the same defects. Plaintiff now alleges that Defendants "lulled" it into believing that they had investigated its claims for payments and intended to resolve their objections with haste and in good faith. *See* TAC ¶¶ 35-36. This scheme to defraud was allegedly designed well in advance of litigation before the WCAB; indeed, Plaintiff alleges that Defendants conspired with other carriers to put CPM out of service and implemented a scheme to deny all payments to CPM and fabricate pretextual objections to CPM's claims. *Id.* ¶ 3. To effectuate the scheme, Defendants allegedly submitted fraudulent objection letters and issued blanket denials of CPM's claims in telephone calls with CPM's collectors. *Id.* ¶¶ 34-44. In short, Plaintiff alleges that Defendants intended to deceive CPM about Defendants' good faith in resolving CPM's claims and using the WCAB process.[3]

Notwithstanding the TAC's attempt to substantiate Plaintiff's fraud allegations, Defendants argue that the allegations are insufficient to support a RICO claim for two additional reasons. First, Defendants argue that the delay of payment and, by extension, Defendants' alleged "lulling" activity do not constitute a "pattern of racketeering activity" under 18 U.S.C. § 1962. However, as already discussed, Plaintiff's allegations concerning Defendants' alleged misrepresentations about their intent to resolve CPM's claims in good faith are sufficient to support the predicate mail fraud and wire fraud allegations. Second, Defendants cite *Medallion Television Enters. v. SelecTV*, 833 F.2d 1360, 1361-65 (9th Cir. 1987) for the proposition that wrongful mail

---

[3]Plaintiff cites *United States v. Jones*, 712 F.2d 1316, 1321 (9th Cir. 1983), for the proposition that the "lulling" activity alleged in the TAC is sufficient to support a claim for mail fraud under 18 U.S.C. § 1341. *Jones*, and *United States v. Sampson*, 371 U.S. 75, 83 S. Ct. 173 (1962) are factually distinguishable and inapposite to this matter. In those cases, the "lulling" activity involved the mailing of *factually accurate* letters to defendants assuring them that all was well and discouraging them "from investigating and uncovering the fraud." *Id.* at 1320-21. Here the mailings intended to lull Plaintiff are alleged to have contained false information concerning Defendants' intent to resolve CPM's claims in good faith. TAC ¶ 54. More importantly, the "lulling" mailings were not intended to obscure any underlying fraud; instead, they *constituted* the fraud itself.

communications cannot establish a pattern of racketeering activity when the communications were part of one scheme to inflict injury on one victim. However, *Medallion* was less concerned with the number of victims than it was with the alleged continuity among defendant's acts or, more importantly, the "threat of continuing activity" by defendant. 833 F.2d at 1363. In *Medallion*, the court concluded that such a threat did not exist because the "fraud was complete." *Id.* at 1364; *see also id.* at 1363 (holding that "[c]ontinuity does not require a showing that the defendants engaged in more than one 'scheme' or 'criminal episode.'").

Here, the TAC alleges that Defendants' alleged fraud is on-going and results in continuing harm to Plaintiff and other entities. *See* TAC ¶¶ 34-44. Accordingly, the Court finds that the TAC's allegations are sufficient to support a RICO claim under 18 U.S.C. § 1962(c) with predicate acts of mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343).

### 3. Concrete Financial Injury Under RICO

Defendants also argue that Plaintiff has failed to demonstrate that it has yet sustained any concrete injury due to Defendants' alleged racketeering activity. *See* 18 U.S.C. § 1964(c) (allowing suit by anyone "injured in his business or property"); *see also Holmes v. Sec. Investors Prot. Corp.*, 503 U.S. 258, 262, 112 S. Ct. 1311 (1992) (holding that Section 1964(c) requires a showing that defendant's alleged RICO violation is the but-for and proximate cause of plaintiff's injury); *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1481 (9th Cir. 1997) ("plaintiff must show a concrete financial loss").

However, the TAC alleges that the sudden recovery rate in its claims before the WCAB, when coupled with its inability to resolve the current lawsuit, has resulted in lost money and attorney's fees. TAC ¶¶ 37-44. Moreover, Defendants fail to account for CPM's alleged cost in servicing the debt of the outstanding receivables. *Id.* Of course, Plaintiff alleges that it has received assignments from most, if not all, of its contracting physicians, which alone resolves any concerns about its ability to demonstrate concrete financial injury. Accordingly, the Court finds that Plaintiff has alleged a concrete financial injury under 18 U.S.C. § 1964(c).

## IV. JUDICIAL NOTICE AND SUR-REPLY

Defendants renew their request that the Court take judicial notice of the Complaint filed in a related case now pending in state court. Defendants correctly note that this Court may consider the Complaint in the related action as a result of CPM's reference to the lawsuit in the TAC. *See* TAC ¶ 47. However, Defendants fail to adequately substantiate the state court action's relevance to the present litigation. Accordingly, the Court declines to take notice of the state court action.

Furthermore, the Court DENIES Plaintiff's Motion for Leave to File a Sur-Reply. Plaintiff filed its Sur-Reply on October 1, 2009, the same date that it filed it requested leave to do the same. Local Rule 7-10 provides that "[a]bsent prior written order of the Court, the opposing party shall

not file a response to the reply." Moreover, the Court does not see how Defendants' reply briefing raised any new argumentation warranting the filing of a Sur-Reply. As a result, the Court STRIKES Plaintiff's Sur-Reply.

## V. DISPOSITION

For the foregoing reasons, the Court hereby DENIES Defendants' Motion to Dismiss. The Court further DENIES Defendants' request that the Court take judicial notice of the Complaint filed in *Zenith Ins. Co. v. California Pharmacy Mgmt., LLC*; Los Angeles Superior Court Case No. BC406917.

The Clerk shall serve this minute order on all parties to the action.